I would like to focus on the first argument raised in the briefs, namely that the lineup at which David Welch identified Appellant was impermissibly suggestive, and that his subsequent in-court identification testimony was unreliable as to deny due process. Facts of this case are straightforward. On February 6, 1999, when the homicide occurred, it was nighttime, it was cloudy, it was overcast, and drizzling. More than one witness said that it was pouring down at the time of the shooting. By most accounts, it was too dark to identify anyone. While there was some artificial lighting, all of it appears to be in the distance. None appears to be directed at the area where the suspect was located. Under these conditions, David Welch said that he was able to view the suspect for less than 30 seconds, at a distance of 30 feet. Welch reported later to the police that he gave a generic description of a black male adult, about 18 or 19 years old, 6 feet tall, 150 pounds, and dark complexion. Welch recalled telling the police that the man with the gun was darker skinned. He was slim-billed, and he was holding a silver .45-caliber automatic handgun. So the unduly suggestiveness is the fact that the petitioner was the darkest, the skin tone, his skin tone was the darkest of all the individuals in the photo array? Absolutely. According to the district attorney who appeared at the lineup, said that she, this was Valerie McGuire. Public defender, correct? No, I'm speaking to the district attorney here. She understood what the problem was, and she said he's the darkest person in the lineup. So she understood immediately what the problem was. The public defender did also recognize that the appellant was the darkest person in the lineup, saying that he was the darkest African-American he'd ever seen, which is something. The rest of the identification was also relatively generic. There was a watch cap. It's just the skin tone that for you, that your argument turns on. Absolutely. It does turn on that. Appellant was the darkest person in the lineup by far, and the court's findings. This was, I'm sorry, this was a live, this was a live, wasn't it? This was a live lineup, correct. I'm getting confused. There was one that was, was there one that was photo in this case? I can't remember. They're live. They're, this was a live lineup, yes, that's correct. When they brought him back a year and a half later. After a year and a half, exactly. And then a hearing was held by the judge at the request of the defender to determine whether the lineup was unduly suggestive, and photographs were produced at that time of the persons in the lineup. The testimony, Mr. Welch was present and was examined and cross-examined at that time, was he not, sir? Yes, he was. And the testimony was that he did not identify the defendant initially based on the darkness of his skin, but instead viewed the live lineup for several minutes and then asked to have the defendant turn sideways so that he could get the view that he had most prominently seen during that. And I think there were different estimates anywhere from, you know, 10 to 30 feet away for 15 to 30 seconds, and at that stage he identified him. Isn't that also correct? Well, what is correct is yes, that is what Mr. Welch said. That's what he said. But considering all of the circumstances here, you have to also take into account what he told the police, which was he had viewed for approximately, he said at trial, for 10 seconds, a person standing about 30 feet away in darkness, at which he did view the profile for a time, and that person turned towards him as well. This was a facial view. And, in other words, he had a frontal view. And it stands to reason that there was more to it than the profile. The other thing I was going to mention is, you know, what does Welch mean by profile? And I don't, I'm not being glib here. It's just there is no description whatsoever. He says facial features. And this is a man who identified my client, the darkest person in the lineup, after one and a half years. Okay? He also testified three times. This case was reversed by the court of appeal initially on State grounds. On jury instruction grounds. That's correct. Not this particular issue. That is correct. But what I'm saying is that a State court found that this was not an overwhelming case. Well, it could be legal error. I mean, we don't, I don't want to draw any conclusions from that. Well, actually, it's part of the record. I mean, we can look at it. Let me ask you this. So your argument is that the skin tone was such that it just pointed to the petitioner as the perpetrator. Absolutely. So that's the man. Let's just assume that for a moment. Then Biggers tells us we then look at all the other circumstances. Absolutely. Determine whether or not his in-court or his out-of-court, his statement was otherwise reliable. And as you just were going over with Judge O'Grady, there are various factors that the court tells us that we ought to consider. Absolutely. And, you know, when you look at them, some tilt in favor of the State, some tilt in favor of the petitioner. And we're in 2255d1 land. Why is the State court's decision under those circumstances unreasonable? Well, let's start with what the court actually held. The State court found that the idea was not unnecessarily suggestive. That's what the court found. And, you know, it found sort of, and by the way, as a corollary, we don't think that the identification was unreliable. I mean, the State court really didn't go through the Biggers factors. Well, they don't have to go through the Biggers factors. You can just look at their bottom line. They had the footnote. Right, exactly, which is my very point. I mean, you do have a footnote. This Court decided that this case, that the identification was fine under Biggers in a footnote. And I don't believe that this Court can sanction that. I don't believe that under the facts of this case, these were reasonable findings. One and a half years. Well, now you just switched the argument. You know, you just switched to d2. An unreasonable determination of the facts. I understand. No, no. I'm not switching the argument. I understand your argument to be an unreasonable application of clearly established law, Biggers. Well, I'm actually making both arguments, and they do dovetail here. And what you have here is an identification that's made after one and a half years. I mean, this is, to me, vertigo-producing. I think it would be very hard pressed to find an ID like this. This stretches the imagination, I believe. And I do believe that the Court can find that this was an unreasonable application of the facts. Would you like to save the balance of your time? Yes, I would. Thank you very much. May it please the Court. I'm Alan Crown, representing the Respondent in this case. And what's before the Court is the need to decide the question of whether or not the State Court applied the applicable federal constitutional law as set forth by the United States Supreme Court and whether or not it was done in a reasonable or unreasonable fashion. The basic argument is not that the Court did not apply applicable federal constitutional law. The Court did. And it cited U.S. Supreme Court precedent. It applied the correct test. The real question is whether it applied it in an unreasonable fashion or not. And Appellant has suggested that, has argued that just because of the difference in skin color, the lineup was unduly suggestive. And that the State Court failed to recognize that obvious fact. Of course, the legal test is whether under the totality of the circumstances there's a problem with the lineup in the sense that the suspect stands out in an unduly suggestive fashion. And here there were a number of factors like height, weight, age, hair, lots of factors that are not at issue because there was no question that the lineup was in an unduly suggestive fashion. Counsel for Petitioner acknowledged that the sole factor that is the bottom of his argument is the skin tone, skin coloring. Yes. And that's the only thing. Of course. So no, as Judge O'Grady pointed out, and as everybody else has pointed out, Petitioner apparently was very dark. Yes. That's the way in which the fellow, the witness, identified him. Yes. Isn't it pretty suggestive? Well, he identified the person who he thought he had seen. Now, skin color is, of course, one factor. Suppose the lineup had been with him and the remaining people were white. Would that be unduly suggestive? I think it might well be. That would be an extreme difference if the defendant was the only person of a particular race. However, here they were all male African Americans, and the overall appearances were similar. Not identical, of course, because it would make no sense to have perfectly identical people, but still similar enough that the witness's observations were tested to determine whether or not he could actually make an identification. And what he wanted to look at was not just the color of the skin. He wanted to look at the facial structure. And in particular, since he had seen the suspect in a left profile, he was looking at a left profile. Now, appellant's counsel suggests that this was just because of skin color, but really a left profile shows you the shape of the brow, the shape of the nose, the shape of the chin, some things that you don't get in a front-on view. And it was those side features that the witness was concerned about because he had seen the suspect in that side view, and that's the perspective he wanted to get before he could make an identification. So it wasn't an identification that was made purely on the basis of skin color, and that's what the State Court found was that it was not unduly suggestive. The State Court went through a, as for the first part of the constitutional test, went through a thorough analysis of it and found that there was nothing about the photographs of the lineup, about any of the testimony about the lineup. It was a live lineup, right? It was a live lineup, and I believe there were photographs of the lineup that were available to the court to see. Maybe that's what I was getting confused. I remember reading about photographs. Yes, I think they took photographs of the live lineup so that afterwards there would be something preserved. Appellant also comments that this was an identification that was made a year and a half after the events. Of course, this was an identification procedure that was at the request of the defense, so the timing was not something chosen by the police or the prosecution. This was something that occurred as a result of a defense request in terms of the timing. And perhaps the attorney's defense. Let me ask you to see if I understand Biggers correctly. It's a two-part inquiry, correct? The first inquiry asks whether or not the lineup was unduly suggestive. If you look at factors here, take you just take Judge Huggs' example, you might agree with Judge Huggs in light of his example. Is that right? His example. You might. I'm just saying you might. I'm not saying you have to, but you might. His example would raise much more serious questions, yes. But nonetheless, then the Court, Biggers teaches us that we go on to ask are there other circumstances that would nonetheless make the overall either infield or on the spot or at the lineup, the identification at the lineup, or in court otherwise reliable? Yes. Is that right? Yes, that's correct, Your Honor. And, of course, the State court decided that the first part of the test that the defendant had failed to meet it, and therefore there was no need to go on to the second part of the inquiry, but indicated in a footnote that it had considered it anyway and decided that there was unopposed. Do you think that preserves that inquiry if we determine we need to look at the other factors in Neal v. Biggers to look at the totality? I don't believe this Court needs to. I think the Court can simply say that the State court was not unreasonable in deciding that the lineup was not unduly suggestive without going to the actual Biggers factors. What was the observation that was made at the time of the crime? What's the evidence show there? As far as the witnesses? The observation that the witness made at the time of the crime. What was the evidence there? I believe that the witness had an opportunity to observe the suspect facing out from a side view towards the street, pointing a gun, and then the suspect turned towards the witness and the suspect was facing the witness briefly, and then the suspect ran away. So I think that was the opportunity for observation. It was apparently a dark night. The witness said there was sufficient lighting that he could see the person and that he thought and he told the police that he thought he could make an identification if given an opportunity. But, of course, the suspect was not found for some time after, I think more than a year after. Okay. Do you understand this to be a D1 case, correct? Yes, I do. An unreasonable application of clearly established Supreme Court law? Yes. Yes, that's correct, Your Honor. Okay. Unless there are further questions, I'll submit at this point. Thank you. Thank you. Thank you. I'd like to conclude briefly. I just want to mention a few things here. First of all, you know, Bigger's Factor 5 essentially is, I believe, you know, the most significant factor in this case in that, you know, a year and a half is, I mean, under the Bigger's case itself, Bigger's said would be a seriously negative factor in most cases. And, actually, when Bigger said that, it was talking about seven months. So that's significant. The other factors, I think, are important as well, and that was, we've already mentioned, Welch's ability to observe what he said he observed at the time and the fact that other witnesses said they couldn't make an ID. And that's significant. And then one last thing, and this is, you know, looking at the rest of the Bigger's factors, the detail in the description. As I already mentioned, that's essentially a generic description. There was nothing about that description that was specific or even, you know, tailored to his view of the side profile. We just listened to the Deputy Attorney General, you know, essentially embellish what Welch supposedly saw. He talked about, you know, the side features, et cetera. Welch said none of that. I mean, he said facial features. We don't know what Welch meant. And there's one last thing I was going to mention very quickly, and that is this Court has reason to take pause here. This is a serious case. It rose and fell on the testimony of Welch, who is not necessarily a believable witness. And it was a jury that really relied on him. He was set forth as, you know, an officer, the kind of person you could believe. And my client is convicted on an ID that is probably, you know, one of the most atrocious IDs I've ever seen in my career. I will submit it. Thank you very much. Thank you. Thank you, counsel. Thank you. We appreciate your arguments. Bell v. Small is submitted at this time.
judges: O'grady, Hug, Paez